# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL NO. 04-CR-519-01 & 02** |
| | : | |
| v. | : | |
| | : | |
| **BARRY AMEIN CUNNINGHAM** | : | |
| and | : | |
| **JOHN PREACHER** | : | |

## MEMORANDUM OPINION

**Savage, J.**                                                                                                 **July 13, 2005**

The defendants, each charged with possession of a firearm by a convicted felon, have moved to suppress evidence seized when the police stopped the car in which they were passengers after receiving a report from an informant that a known felon in the car had a firearm. Defendant Barry Amein Cunningham seeks to suppress the gun found under the rear passenger's seat where he was seated, and defendant John Preacher seeks to suppress the gun found on his person during a pat down search. They both argue that there was a lack of probable cause to stop the vehicle in the first place and the evidence was the product of that illegal stop.

The disposition of the motion turns on the reliability of the informant who provided the information leading to the stop and the content of his information. I find that the information was reliable and gave the police probable cause to believe that the vehicle contained evidence of a crime and that a crime was being committed. At least, the police had reasonable suspicion to stop and investigate the car and its occupants. Therefore, the motion to suppress evidence of the guns must be denied.

**Factual Background**

The events leading to the seizure of the guns started with a phone call from a confidential informant to an off duty police officer, Policeman William Murphy. The informant told Murphy that "Biz," who was known to Murphy as Barry Cunningham, was walking at Ninth and Booth Streets in Chester and had a gun. During the conversation, the informant related that Biz had gotten into the right rear passenger seat of a silver Mustang which was occupied by two other Black males. He then relayed the path being traveled by the Mustang.

During a previous police investigation, Murphy learned that Cunningham had been convicted of a felony. Hence, Murphy knew that Cunningham, as a convicted felon, could not legally possess a gun.

Murphy transmitted the information that a passenger in the Mustang had a gun to another policeman, John Gretsky, who in turn asked Policeman Gerald Askins, who was closer to the area where the Mustang was traveling, to pursue it because the right rear passenger was armed.

When he spotted the Mustang, Askins signaled it to stop. As he was approaching the car from the rear, Askins noticed the right rear passenger lean and bend forward as if he were picking up or laying down something. When he got to the vehicle, Askins saw a gun protruding from under the rear seat. He ordered the rear passenger out of the car and placed him under arrest. As he was doing so, Gretsky arrived on the scene and was told by Murphy that he had found a gun. Gretsky immediately removed the front passenger and patted him down for his safety. During the frisk, Gretsky discovered a hand gun in the front passenger's waistband.

### Discussion

This is not a case of a routine car stop. The police did not stop the Mustang for a traffic violation or because it had been involved in criminal activity. The focus of the police was not the car. It was the right rear passenger who the police reasonably suspected was committing a crime, specifically, illegal possession of a firearm.

The vehicle stop was justified both as an arrest for probable cause and as an investigatory stop based upon reasonable suspicion. In either instance, the police seizure that followed was legal. The gun found on the floor where Cunningham was seated was observed by Askins as he stood outside the car while conducting an investigatory stop and before he made an arrest. The gun taken from Preacher was discovered during a frisk for weapons during the stop.

Police do not need a warrant to search an automobile incident to an arrest if "there is a fair probability that contraband or evidence of a crime will be found" in it. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). In other words, probable cause that the vehicle contains contraband or evidence of a crime justifies a warrantless search of the vehicle. *Chambers v. Maroney*, 399 U.S. 42, 52 (1970). In this case, the police had probable cause to believe that a crime was being committed (illegal possession of a firearm) and that the vehicle contained evidence of a crime (the firearm). Thus, stopping the vehicle was legal.

We look at the justification for an investigatory stop in light of the broadcasting officer's possession of reasonable suspicion on the basis of articulable facts. *United States v. Hensley*, 469 U.S. 221, 232-33 (1985). Murphy, who transmitted the information which Askins and Gretsky acted upon, knew that Cunningham, who used the nickname "Biz", had a prior felony conviction. When his informant told him that Cunningham had a

gun, Murphy concluded that he was violating the law. Consequently, so long as his informant was reliable, he had probable cause to believe that Cunningham was committing a crime.

Reasonable suspicion, a lesser standard than probable cause, can justify an investigatory stop. Indeed, information from previously reliable sources, as well as information from anonymous sources whose information is accurate and detailed, may constitute reasonable suspicion. *United States v. Nelson*, 284 F.3d 472, 478 (3d Cir. 2002). The timing of the information relative to the crime is relevant to the reasonable suspicion inquiry. *Id*. at 480. Thus, in analyzing the tip, we look to the reliability of the person's past information, the specificity of the content of the current information and the recency of the occurrence being reported.

The information given Murphy was sufficiently reliable to justify his acting on it. Murphy's informant had previously proven reliable. The three instances where Murphy had acted upon his informant's reports resulted in convictions.

The information supplied Murphy was fresh and detailed. The informant reported the events as they were happening. He gave a description of the car, the direction it was traveling, the number of occupants and Cunningham's position in the car. The basis of the informant's knowledge that Biz had a gun was credible because it was based on his own knowledge, was being reported while the crime was being committed and contained sufficient detail. The informant reported that he had personally observed Biz in possession of the gun and traveling in the rear passenger seat of the particular vehicle.

The facts here are distinguishable from those in *United States v. Ubiles*, 224 F.3d 213 (3d Cir. 2000). First, unlike the anonymous tipster in *Ubiles*, Murphy's informant was

known to him and had provided him accurate information about criminal activities in the past, on more than one occasion. Second, Ubiles had not been observed engaged in any illegal conduct. There was nothing to indicate that his possession of the gun was illegal. Here, Murphy knew that Cunningham, as a convicted felon, could not legally possess a gun.

Once Askins stopped the Mustang, he did not need a warrant to search it because he had probable cause to believe at least one of the occupants was armed. Before anyone had been placed under arrest and while he was investigating the report, Askins saw part of the gun on the floor protruding from under the rear seat. Thus, he was justified in immediately ordering the rear passenger out of the car and then seizing the weapon. *See Horton v. California*, 496 U.S. 128, 136-37 (1990).

Given the information supplied by Murphy that the rear passenger had a gun, coupled with that passenger's furtive movements, Askins had a reasonable suspicion that at least one of the occupants was armed and dangerous. Consequently, even if he had not seen the gun in the car, he could have searched it and its occupants.

During an investigatory stop, the police may order the driver and any passengers out of the car. *United States v. Bonner*, 363 F.3d 213, 216 (3d Cir. 2002). Indeed, the police may frisk a vehicle's occupants and search the passenger compartment if they have reasonable suspicion that the occupants might be armed and dangerous. *Michigan v. Long*, 463 U.S. 1032, 1049-50 (1983). Hence, the police action of frisking Preacher was legal.

Although the government has not raised it, the issue of Preacher's standing to challenge the search must be addressed. A passenger who neither owns nor leases the

car has no standing to challenge a search of it.  *Rakas v. Illinois*, 439 U.S. 128, 132-34 (1978); *United States v. Baker*, 221 F.3d 438, 441-42 (3d Cir. 2000).  Under the circumstances, Cunningham had no standing to challenge the search and seizure. Although the gun was in close proximity to him, he was not in possession of it.  Nor was he the owner or driver of the car.

In Preacher's case, the pat down of his person was within the permissible scope of a car stop.  Gretsky did not conduct a full scale search of his person.  On the contrary, Gretsky removed Preacher from the front seat and patted him down for his own safety to uncover any weapons.  In light of Askins' having advised him that a gun was in the car, Gretsky had a reasonable concern for his and Askins' safety.

## Conclusion

The information upon which the police acted to stop the car in which the defendants were passengers was reliable, having been provided by a known informant who had supplied good information in the past and containing sufficient detail.  It gave the police, at least, reasonable suspicion that a crime was being committed and that the car contained evidence of a crime, justifying a stop of it.  Therefore, the seizure of the guns during the stop was not illegal.

                                        /s/
                              TIMOTHY J. SAVAGE, J.